**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KALA L. HEALD, on behalf of herself and
others similarly situated,

      Plaintiff,

vs.                                               Case No. 3:13-cv-993-J-34JRK

OCWEN LOAN SERVICING, LLC,

      Defendant.
_____

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Kala L. Heald's ("Heald") First Amended Class Action Complaint (Doc. 10; Amended Complaint); Ocwen's Motion to Dismiss the First Amended Class Action Complaint (Doc. 18; Motion) filed by Defendant Ocwen Loan Servicing, LLC ("Ocwen"); and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 23; Response).

**I.**     **Background**

Heald initiated this action by filing her initial complaint (Doc. 1; Complaint) on August 15, 2013. Thereafter, on November 13, 2013, Heald filed her Amended Complaint, which is the operative pleading in this action.[1]

Heald sues Ocwen, alleging breach of contract in Count I, violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in Count II, and violation of the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55-559.785

---

[1] Heald filed Plaintiff's Motion for Class Certification and to Stay Ruling until Discovery and Briefing is Complete (Doc. 47; Motion for Class Certification) on April 30, 2014.

("FCCPA") in Count III.  See generally Amended Complaint.  Ocwen is a default loan servicer for consumer mortgage loans and is engaged in the business of collecting on promissory notes and other debts in default for creditors or holders of the notes.  Id. ¶ 6.  Heald's claims stem from Ocwen allegedly charging her improper fees in connection with a loan modification agreement, which Heald and Ocwen entered into after Heald defaulted on her home loan, as well as from Ocwen subsequently applying the amount of the improper fees to Heald's principal balance.  Id. ¶ 2.  Heald attached to her Amended Complaint a copy of the loan modification agreement (Doc. 10-1, Exhibit A; Loan Modification Agreement), the promissory note and mortgage (Doc. 10-2, Exhibit B; Note and Mortgage)[2], and Account Statements dated February 27, 2013, April 25, 2013, June 13, 2013, July 15, 2013, August 13, 2013, and September 13, 2013 (Doc. 10-3, Exhibit C)[3], all of which the Court considers to be part of the Amended Complaint.[4]

Heald executed a promissory note in the principal amount of $280,000.00 on July 26, 2007, secured by a mortgage executed by herself and her husband on their property in Neptune Beach, Florida.  See generally Note and Mortgage.  Heald defaulted on the loan on January 1, 2009.  Amended Complaint ¶ 9.  On April 22, 2009, U.S. Bank National Association, as Trustee for Structured Assets Securities Corporation Mortgage Pass-Through

---

[2] Although Heald submitted the Note and Mortgage as one exhibit, because these are distinct documents with separate paragraph ordering, the Court will cite these documents individually. However, when referenced together, the Note and Mortgage are also referred to throughout this Order as the "loan documents."

[3] The Court will reference the Account Statements as the February Statement, April Statement, June Statement, July Statement, August Statement, and September Statement.

[4] The Eleventh Circuit has held that "the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1368 (11th Cir.1997).

Certificates, Series 2007-BC4 ("U.S. Bank") filed a foreclosure complaint against Heald in the Circuit Court, Fourth Judicial Circuit of Florida, regarding the Note and Mortgage on Heald's Neptune Beach, Florida property. Id. ¶ 7. While the foreclosure action was pending, servicing of the loan was assigned from Chase Home Finance, LLC, to Ocwen. Id. ¶ 10. Thereafter, Heald and Ocwen entered into the Loan Modification Agreement, under which Heald and Ocwen agreed to modified payment amounts beginning March 1, 2013. The terms of the Loan Modification Agreement reduced Heald's principal balance to $175,000.00, provided for an interest rate of 3.6%, and provided for an initial principal and interest payment of $1,284.48 on or before February 1, 2013 and $896.67 beginning on March 1, 2013. See Loan Modification Agreement ¶¶ 1, 2, & 4. Thereafter, on April 15, 2013, the foreclosure court entered an order granting Ocwen's motion to dismiss the foreclosure action against Heald. Amended Complaint ¶ 12.

Heald's claims arise, in part, out of her first post-modification billing statement, dated February 27, 2013, in which Ocwen charged and collected from Heald a $148.50 fee, labeled "Curr-Civil Litigation," in addition to Heald's modified monthly principal, interest, and escrow charges.[5] Amended Complaint ¶ 15; see February Statement.[6] According to Heald, this $148.50 "Curr-Civil Litigation" fee was "improper, unauthorized, and un-owed[.]" Amended Complaint ¶ 15. Heald alleges that after realizing it improperly charged Heald the $148.50

---

[5] The $148.50 fee is dated February 28, 2013. See February Statement.

[6] The February and June Statements include the following statement below the heading labeled "Important Messages": "Due to the status of your loan, fee(s) or charge(s) have recently been added. Please review the enclosed fee description page for explanation of these and any other fee(s) or charge(s)." See February & June Statements. Heald did not include with her Amended Complaint and other attachments the referenced "fee description page."

fee, Ocwen "reconciled the fee" and applied the amount to Heald's principal loan balance. Id. ¶ 17; see April Statement.[7] Heald's April Statement contains an $825.00 "Foreclosure Fee," which Heald alleges "was reconciled by the Defendant similar to the $148.50 'Curr-Civil Litigation' fee." See April Statement; Amended Complaint ¶ 17. However, Heald never paid the $825.00 "Foreclosure Fee," so Ocwen did not apply payment of the fee to Heald's principal balance as it did with the $148.50 fee. See Amended Complaint ¶ 18.[8]

On Heald's June Statement, Ocwen charged Heald a $396.00 fee labeled "Curr-Civil Litigation."[9] See June Statement; Amended Complaint ¶ 19. Heald alleges that this fee was also improper. Amended Complaint ¶ 19. Heald requested that Ocwen deduct the $396.00 fee from her monthly statement; however, the $396.00 fee appeared again on Heald's July Statement with the label "Prev-Civil Litigation." Amended Complaint ¶¶ 19-20; see July Statement. The $396.00 "Prev-Civil Litigation" fee also appears on Heald's August Statement. See August Statement; Amended Complaint ¶ 21. On Heald's September Statement, Ocwen charged Heald a $429.00 fee labeled "Prev-Civil Litigation." See September Statement; Amended Complaint ¶ 22. It appears that the $429.00 fee is comprised of the previous fee of $396.00 plus a $33.00 "Civil Litigation" fee charged on August 27, 2013. See September Statement; Amended Complaint ¶ 22. Heald did not pay

---

[7] The portion of the April Statement labeled "Recent Account Activity" indicates that on March 18, 2013, Heald made a "Principal Payment" in the amount of $148.50. See April Statement.

[8] In the Motion, Ocwen notes that the April Statement shows that Ocwen "paid a 'Foreclosure Fee' as an expense payment on April 24," and that "the April [S]tatement did not seek reimbursement of any additional expenses." Motion at 3 n.2. Indeed, the April Statement shows that Ocwen charged an $825.00 "Foreclosure Fee" on April 24, 2013, and that an "Expense Payment" of $825.00 was made on April 24, 2013, and added to the list of "Total" payments. See April Statement.

[9] The $396.00 fee is dated June 10, 2013. See June & July Statements.

the $396.00 fee, nor did she pay the $429.00 fee. See June, July, August, & September Statements. Heald asserts that all of the allegedly improper "Litigation Fees" are dated after the litigation in the foreclosure suit ended and after Ocwen and Heald agreed to a mortgage modification. Amended Complaint ¶ 23. However, as Ocwen notes in the Motion, and as indicated by Heald's own pleadings, Ocwen charged the $148.50 fee on Heald's February 27, 2013 billing statement, which was over a month before the state court's foreclosure dismissal on April 15, 2013. See Motion at 3; Amended Complaint ¶ 12; see also State Court Foreclosure Docket at 4 (Doc. 18-1, Exhibit A)[10].

Heald alleges that Ocwen's "scheme" is to charge borrowing consumers additional principal balance payments "disguised" as "Civil Litigation" and "Foreclosure" fees. Amended Complaint ¶ 26. Specifically, Heald asserts that "[r]ather than doing an in-depth analysis to determine the appropriate and specific amount of civil litigation fees, Defendant regularly imposes 'Civil Litigation' charges that the consumer does not owe." Id. ¶ 27. According to Heald, "[i]t is only until later, that upon an adequate investigation and accounting by Defendant, that Defendant realizes the charges are improper and applies the amount of the fees to the consumer's principal balance." Id.  Heald alleges that with this conduct,

---

[10] Ocwen asserts that the Court may take judicial notice of the State Court Foreclosure Docket for purposes of deciding the Motion. See Motion at 4 n.3. A court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. This is so, as long as such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). Here, the parties do not dispute the fact that the proffered public record is accurate, nor do they appear to dispute that the Court should take judicial notice of the document. See Fed. R. Evid. 201(b). Thus, the Court takes judicial notice of the State Court Foreclosure Docket as it is "central" to Plaintiff's claims. See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

"Defendant has artificially raised the monthly amounts due by Plaintiff and the Class, in breach of the new monthly payment amount agreed upon by the Parties in their respective Modification Agreements." Id. ¶ 28.

In Count I, Heald pleads a claim of breach of contract and alleges that Ocwen breached the terms of the Loan Modification Agreement and the underlying loan documents by charging her "additional 'Principal Balance' payments disguised as 'Civil Litigation' fees." Amended Complaint ¶¶ 42-55. For this alleged breach, Heald seeks specific performance of the Loan Modification Agreement and underlying loan documents to the extent that she "should not be forced to pay amounts in excess of [her] agreed upon monthly payments, including additional principal balance charges disguised by Ocwen as 'Civil Litigation' fees." Id. ¶ 51. In Count II, Heald alleges that Ocwen violated the FDCPA "by falsely misrepresenting the character, amount, or legal status of the debt by charging Plaintiff and the Class additional 'Principal Balance' charges disguised as 'Civil Litigation' fees" in violation of 15 U.S.C. § 1692e(2) and by "collect[ing] fees or charges . . . not expressly authorized by the [Loan] Modification Agreement or Loan Documents which created the debt" in violation of 15 U.S.C. § 1692f(1). Id. ¶¶ 56-65. In Count III, Heald alleges that Ocwen violated the FCCPA by "knowingly charg[ing Heald] 'Civil Litigation' fees despite knowing that such fees were improper and that all amounts would be applied to principal," in violation of Florida Statute section 559.72(9). Id. ¶¶ 66-74. For these alleged violations, Heald seeks damages, injunctive relief, and reasonable attorney's fees and costs. See generally id.

On December 27, 2013, Ocwen filed the Motion, in which it argues that "[b]ecause the loan documents expressly authorize Ocwen's actions" the Amended Complaint "globally fails

to state a cause of action." Motion at 1-2.  As such, Ocwen contends that Heald's Amended Complaint should be dismissed without prejudice and that Ocwen should be awarded reasonable attorneys' fees and costs.  Id. at 2.  Heald filed her Response on January 10, 2014.  See Response.  Accordingly, this matter is ripe for review.

## II.     Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Twombly, 550 U.S. at 555 (internal

quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678-79.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III.   Analysis

#### A.    Count II: Fair Debt Collection Practices Act (FDCPA)

Ocwen moves to dismiss Count II of Heald's Amended Complaint, the FDCPA claim, for failure to state a claim upon which relief can be granted.  See Motion at 8-13; Rule 12(b)(6). To state a claim under the FDCPA, a plaintiff must allege that: "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002) (quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)); Cole v. Lobello Painting, Inc., No. 8:06-CV-2171-JDW-MSS, 2007 WL 2330860, at *2 (M.D. Fla. Aug. 14, 2007) (same); see also Buckman v. Am. Bankers Ins. Co. of Fla., 115 F.3d 892, 894-95 (11th Cir. 1997) (per curiam) ("The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'").

Ocwen argues that Heald has failed to allege a violation of the FDCPA under 15 U.S.C. § 1692f(1) because contrary to Heald's assertion that Ocwen collected "'Principal Balance' charges disguised as 'Civil Litigation' fees not expressly authorized" by the Loan Modification Agreement or loan documents, Ocwen's actions were, in fact, authorized by the terms of the Loan Modification Agreement and the Mortgage. Motion at 12. For this same reason, Ocwen contends that Heald has failed to allege a violation of the FDCPA under § 1692e(2), which prohibits falsely representing the character, amount, or legal status of any debt. Id. at 12-13. In response, Heald argues that Ocwen fails to explain "how complying with the [Loan Modification Agreement] and violating the FDCPA are mutually exclusive." Response at 12. Put another way, Heald seems to assert that the terms of the loan documents themselves may violate the FDCPA. Id. Additionally, Heald maintains that she does not allege that Ocwen charged her civil litigation fees. Id. Rather, Heald argues that her claim is based on her allegation "that Ocwen charged her additional principal balance payments, which are not authorized by the [Loan Modification Agreement] or any other loan documents, and <u>disguised</u> them as civil litigation fees." Id. (emphasis added).

The relevant portion of § 1692f provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). In order to state a claim alleging a violation of § 1692f(1), a plaintiff must allege that a debt collector collected or attempted to collect "any amount" that was not

"authorized by the agreement creating the debt or permitted by law." Id.  In her Response, Heald argues that Ocwen violates the FDCPA because the fees it charges, even if authorized by the loan documents, nevertheless violate the FDCPA.[11] See Response at 12.  However, Heald did not raise such a claim in the Amended Complaint, and it is, therefore, not properly before the Court. See Huls v. Llabona, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (argument not properly raised where the plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint).  Rather, in the Amended Complaint Heald alleges "Ocwen's conduct . . . violates § 1692f(1) since Ocwen collected fees or charges ('Principal Balance' charges disguised as 'Civil Litigation' fees) not expressly authorized by the [Loan] Modification Agreement or Loan Documents which created the debt."  Amended Complaint ¶ 63.  "The FDCPA bans attempts to collect any '*amount*' that is not authorized by the instrument[,]" and "a defendant may not escape liability merely by demonstrating the existence of a valid obligation." Williams v. Edelman, 408 F. Supp. 2d 1261, 1269 (S.D. Fla. 2005) (emphasis in original).  Thus, the Court must turn to the Loan Modification Agreement and underlying loan documents to determine whether Heald has stated a claim under the FDCPA.

The relevant portion of the Loan Modification Agreement provides:

1. You agree that the new principal balance due under your modified Note and Mortgage will be $175,000.00. Upon modification, your Note will become contractually current; however fees and charges that were not included in this principal balance will be your responsibility. . . .

6. You understand and agree that: . . .

---

[11] Notably, Heald does not explain or cite to any authority supporting the vague assertion that the terms of the loan documents violate the FDCPA, nor does she specify what other law the loan terms may violate. See generally Response.

> (c) Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

Loan Modification Agreement ¶¶ 1, 6.(c).  Additionally, the terms of the Mortgage, which remain in full force and effect following the loan modification, except as otherwise provided by the Loan Modification Agreement,[12] provide, in relevant part:

> **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable law. . . .
>
> **22. Acceleration; Remedies.** . . . Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22 [for Borrower's breach of any covenant or agreement in the Security Instrument], including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Mortgage ¶¶ 14, 22.  Thus, by their terms, both the Loan Modification Agreement and Mortgage authorize Ocwen to charge Heald fees incurred in connection with servicing her loan or in connection with her default, even though those fees were not included in her original principal balance.

---

[12] Paragraph 6.(b) of the Loan Modification Agreement provides:

> All covenants, agreements, stipulations and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your [sic] obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

Loan Modification Agreement ¶ 6.(b).

The terms of the Mortgage also authorize Ocwen's application of Heald's payment of the $148.50 fee, charged on the February Statement, to Heald's principal balance, shown on the April Statement. Paragraph 2 of the Mortgage provides:

> **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [(funds for escrow items)]. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Mortgage ¶ 2. Heald asserts that she "alleges that Ocwen did not charge civil litigation fees" but that "Ocwen charged her additional principal balance payments[.]" Response at 12.[13] However, the February & April Statements indicate that Ocwen charged Heald a "fee" and classified Heald's payment of the fee as "principal payment," all in accordance with the Loan Modification Agreement and Mortgage. See February and April Statements. Accordingly, Heald has failed to plead a violation of § 1692f(1). See Malowney v. Bush/Ross, No. 8:09-CV-1189-T-30TGW, 2009 WL 3806161, at *6 (M.D. Fla. Nov. 12, 2009) (plaintiff failed to plead a violation of § 1692f(1) where both Florida law and the homeowners associations' governing documents authorized defendant to charge the allegedly unlawful attorney's fees); cf. Thompson v. CIT Group/Consumer Fin., Inc., No. 05CV1197TMAP, 2005 WL 2562606,

---

[13] Heald raises this argument in response to Ocwen's Motion to Dismiss her FDCPA claim. See Reponse at 12. However, Heald's allegation regarding Ocwen charging her "additional principal balance payments" is actually set forth in Count I of the Amended Complaint, which asserts a claim for breach of contract. See Amended Complaint ¶ 48. Heald's allegations in the Amended Complaint alleging a violation of the FDCPA assert that Ocwen charged her "additional 'Principal Balance' charges." See Amended Complaint ¶¶ 62, 63. Nevertheless, because the Court has determined that the parties' agreements creating the debt authorize Ocwen's actions, this distinction is not material for purposes of the Court's resolution of the Motion.

at *1-*2 (M.D. Fla. Oct. 11, 2005) (plaintiff adequately stated a claim for a violation of § 1692f(1) by alleging that defendants "attempted to collect an amount not authorized by the agreement which created the debt").

Heald has also failed to plead a violation of the FDCPA under 15 U.S.C. § 1692e. The relevant portion of § 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>    (2) The false representation of--
>
>       (A) the character, amount, or legal status of any debt[.]

15 U.S.C. § 1692e(2)(A). In the Amended Complaint, Heald alleges that "Ocwen's conduct violates § 1692e(2) by falsely misrepresenting the character, amount, or legal status of the debt by charging Plaintiff . . . additional 'Principal Balance' charges disguised as 'Civil Litigation' fees." Amended Complaint ¶ 62. In the Motion, Ocwen again argues that Heald fails to plead a violation under this statute because "the express terms of the [Loan Modification Agreement] and loan documents . . . authorize the legal expense, and Ocwen's refund of plaintiff's payment of this fee to her principal balance." Motion at 13. In response, Heald contends that she "sufficiently alleges that Ocwen falsely represented the character of the additional principal balance payments charged to her; especially in light of the fact that Ocwen has admitted that the civil litigation fees at issue were in fact applied to Plaintiff's principal balance and were not fees as it represented." Response at 11.

As with Heald's allegations regarding §1692f(1), Heald's theory regarding Ocwen's alleged violation of § 1692e(2)(A) is contravened by the Loan Modification Agreement, underlying loan documents, and Account Statements.  Specifically, Heald's allegation that Ocwen falsely represented the character of the fees charged is refuted by the February and April Statements, which show a $148.50 "Curr-Civil Litigation" fee and a $148.50 "Principal Payment," both of which are consistent with the terms of the Loan Modification Agreement and underlying loan documents.  The fact that Ocwen applied Heald's payment of the $148.50 fee to Heald's principal balance, a course of action permitted by the Mortgage, does not change the character of the $148.50 fee assessed against her.[14]

For these reasons, the Court determines that Heald has failed to state a claim under the FDCPA because the Amended Complaint and its attachments fail to allege facts which show that Ocwen engaged in an act or omission prohibited by the FDCPA.[15]  Accordingly, Count II of Heald's Amended Complaint is due to be dismissed.[16]

---

[14] Ocwen also contends that with regard to its alleged violation of § 1692e(2)(A), Heald fails to specify whether the "false representation" at issue is a reference to the character, the amount, or the legal status of the charges. Motion at 12-13. Heald's allegations in the Amended Complaint fail to plead facts which raise an inference that Ocwen made any false representations regarding the amount or legal status of the charges. See generally Amended Complaint. Additionally, because the Court has determined that the attachments to the Amended Complaint contravene any alleged violation of § 1692e(2)(A), the Court declines to address this argument.

[15] As such, the Court declines to address Ocwen's argument that it is not acting as a "debt collector" as defined by the FDCPA. See Motion at 8-12.

[16] Ocwen requests an award of attorneys' fees and costs pursuant to 15 U.S.C .§ 1692k(a)(3). Motion at 13. This section of the FDCPA provides: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). On this record, the Court cannot find that Heald brought her FDCPA claim against Ocwen in bad faith or for the purpose of harassment. The Court's finding that Heald does not state a claim under the FDCPA does not equate to a finding that she proceeded in bad faith and for the purpose of harassment by bringing this claim. Accordingly, Ocwen's request for an award of attorney's fees and

(continued...)

### B.     Counts I & III: State Law Claims

Having determined that the only claim supporting federal jurisdiction in this action is due to be dismissed, the Court next considers whether to continue to exercise supplemental jurisdiction over the remaining state law claims.  "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).  Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).   However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994).  Upon due consideration, the

---

(...continued)
costs in relation to the dismissed FDCPA claim is denied.

Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Heald's state law claims.

What remains are uniquely state law claims that are best addressed by the state courts. Although the parties have conducted some discovery, no dispositive rulings have been made as to the state law claims, nor has the action been certified to proceed as a class action. Thus, the early procedural posture of the case weighs in favor of declining jurisdiction in order to allow the case to proceed fully in state court. When, as here, a plaintiff's federal claim is dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims." Raney, 370 F.3d at 1089; Busse v. Lee Cnty, Fla., 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."). See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Counts I and III of the Amended Complaint. Accordingly, the claims set forth in Counts I and III of the Amended Complaint

are due to be dismissed without prejudice to refiling in the appropriate state court, if she so chooses.  See Raney, 370 F.3d at 1089.

## IV.     Conclusion

For the foregoing reasons, the Court determines that Heald's FDCPA claim, Count II, is due to be dismissed for failure to state a claim upon which relief can be granted.  Having determined that Heald's only federal claim is due to be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims set forth in Counts I and III of the Amended Complaint.  Instead, those claims will be dismissed without prejudice to Heald refiling them in state court.

Accordingly, it is hereby **ORDERED**:

1. Ocwen's Motion to Dismiss the First Amended Class Action Complaint (Doc. 18) is **GRANTED** as follows.

2. Count II of the Amended Complaint is **DISMISSED.**  Counts I and IIII of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling them in the appropriate state court.

3. The Clerk of the Court is directed to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 16th day of September, 2014.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc18
Copies to:
Counsel of Record